UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT HOUSE, JR., | ) | |
| | ) | |
| PLAINTIFF, | ) | No. 15 C 2718 |
| | ) | |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| ILLINOIS BELL TELEPHONE | ) | |
| COMPANY d/b/a AT&T ILLINOIS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert House, Jr. brings claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115 *et seq.* House alleges that his employer, Illinois Bell Telephone Company, did not pay him overtime compensation for the time he worked before his shift started, during his lunch breaks, and after his shift ended. R. 14. Specifically, House alleges that since he began working for Illinois Bell on February 1, 2005, *id.* ¶ 16, he spent (1) 25 to 30 minutes before his eight-hour shift began, three to five days each week, cleaning his truck, checking for and ordering supplies, reviewing job assignments, talking with his manager and co-workers about work, and completing time sheets from the previous day ("pre-shift claims"), *id.* ¶¶ 17, 32-34; (2) 30 minutes during his mandatory lunch break, three days each week, securing job sites, monitoring testing equipment, and driving between job sites ("lunch break

1

claims") *id.* ¶¶ 17, 35-37; and (3) 30 minutes after his eight-hour shift ended, three to five days each week, cleaning out his truck, checking and ordering supplies, reviewing blueprints, reviewing job assignments, talking with his manager and co-workers about work, and completing paperwork ("post-shift claims"), *id.* at ¶¶ 38-40.

Illinois Bell moves to dismiss House's FLSA claims to the extent they predate February 28, 2011 on the ground that they are time-barred. Illinois Bell also moves to dismiss House's IWPCA claim on the ground that House has not alleged a valid agreement on which to base those claims. Accepting all well-pleaded facts as true and drawing all reasonable inferences in House's favor, *see Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013), the Court grants in part and denies in part Illinois Bell's motion to dismiss House's FLSA claims, and grants Illinois Bell's motion to dismiss House's IWPCA claims.[1]

---

[1] The parties do not dispute the propriety of House's IMWL claim, but there is a lack of clarity around how far back each believes the claim reaches. Neither devotes significant time to the issue, each mentioning the dispute only in passing in footnotes to their respective motion papers.

There was an IMWL claim pled in *Blakes* on January 17, 2011 that was voluntarily dismissed by the named plaintiffs on June 23, 2011. R. 14 ¶ 13. House seems to argue that for the roughly six month period the (perpetually accruing) IMWL claim was pending in *Blakes*, it was tolled. R. 24 at 9-10, n. 5. Illinois Bell does not dispute that the claim was tolled, but argues that it should only reach as far back as the date it was first asserted, January 17, 2011. R. 28 at 11, n. 12. Neither party expresses any opinion on whether the tolling should apply equally or differently to IMWL claims for pre-shift, lunch break, and post-shift work.

The Court does not attempt to resolve the matter now. The parties are to submit further briefing on this issue as set forth below.

## FLSA Claims

The FLSA provides a two-year statute of limitations for ordinary claims and a three-year limitations period for willful violations. 29 U.S.C. § 255(a). The parties agree that House originally filed this action on February 28, 2014. *Tinoco v. Ill. Bell Tel. Co.*, No. 14 CV 1456, R. 2 (N.D. Ill.). Nevertheless, House seeks damages for nearly seven years, *i.e.*, going back to August 5, 2008. R. 14 ¶ 12. House argues that the earlier-filed collective action *Blakes v. Illinois Bell Co.*, No. 11-cv-336 (N.D. Ill.) tolled the statute of limitations on his FLSA claims from the date he filed his opt-in consent in that case, August 5, 2011. R. 14 ¶¶ 12, 14. Alternatively, he argues that his FLSA claims relate back to his opt-in date under Federal Rule of Civil Procedure 15(c). R. 24 at 5-7. Illinois Bell moves to dismiss all FLSA claims before February 28, 2011 on the basis that they exceed the scope of the claims conditionally certified in *Blakes*.[2] R. 10, 20.

---

[2] The FLSA claims in *Blakes* pertained narrowly to work during lunch breaks and post-shift completion of electronic time sheets. *See Blakes v. Illinois Bell Tel. Co.*, No. 11-cv-336, 2011 WL 2446598, at *3-5 (N.D. Ill. June 15, 2011). Judge Kim conditionally certified a collective action in *Blakes* on June 15, 2011, and an FLSA § 216(b) Notice was sent to House and other potential class members in mid-2011. The Notice specified that the *Blakes* case concerned "working through meal breaks and completing time sheets at the end of the shift." *See* R. 14-1 at 2. House opted-in to *Blakes* on August 5, 2011.

In the fall of 2012, Illinois Bell sought a protective order in *Blakes* preventing discovery of information pertaining to performance evaluations. The plaintiffs requested the information in support of the theory (now advanced by House) that company productivity standards drove managers to impose unreasonable efficiency pressure on cable splicers. Judge Kim granted the protective order, barring any further discovery on the topic. In so holding, Judge Kim found the "efficiency

3

Judge Chang recently considered a similar motion in *Wiggins v. Illinois Bell Telephone Company*, No. 15-cv-02769, R. 19 (N.D. Ill. Oct. 22, 2015). The Court adopts Judge Chang's well-reasoned opinion in *Wiggins* to deny in part and grant in part Illinois Bell's motion to dismiss House's FLSA claims here. For the reasons set forth in Judge Chang's Order:

> The statute of limitations is tolled for House's lunch break claims, with the exception noted below. House's lunch break claims thus extend back two years from his opt-in date in the *Blakes* action to August 5, 2009 for non-willful FLSA violations, or back three years to August 5, 2008 for willful FSLA violations.
>
> The statute of limitations is not tolled as to House's lunch break claims to the extent House alleges he worked through lunch to meet company efficiency standards. These lunch break claims extend back two years from the filing of *Tinoco* to February 28, 2012 for non-willful FLSA violations, or back three years to February 28, 2011 for willful FSLA violations.
>
> The statute of limitations is not tolled for House's pre-shift or post-shift work claims. These claims extend back two years from the filing of *Tinoco* to February 28, 2012 for non-willful FLSA violations, or back three years to February 28, 2011 for willful FSLA violations.

---

theory" to be a "significant shift from" and "irrelevant to" the conditionally certified claims. *Blakes v. Ill. Bell Tel. Co.*, 2012 WL 5862747, at *1 (N.D. Ill. Nov. 19, 2012). A year later, Judge Kim again rejected the plaintiffs' efforts to assert an "efficiency theory" of their lunch break claims. *Blakes v. Ill. Bell Tel. Co.*, 2013 WL 6662831, at *9 (N.D. Ill. Dec. 17, 2013) (decertifying the lunch break claims).

The plaintiffs in *Blakes* requested leave to file a second amended complaint. Denying the request, Judge Kim reiterated that "venturing beyond allegations based on job-site maintenance [and] travel [over lunch breaks], and insufficient time to complete timesheets [post-shift] to include *unreasonable efficiency standards*, *pre-shift work*, and *other post-shift activities* changes the basic factual premise of the case." *Blakes v. Ill. Bell Tel. Co.*, 75 F. Supp. 3d 792, 803-04 (N.D. Ill. 2014) (emphasis added).

This action reasserts the decertified lunch break claims and expressly pleads the pre and post-shift claims and the efficiency-pressure theory not pled in the *Blakes* action. R. 14.

## IWPCA Claim

The IWPCA permits recovery of all unpaid wages plus monthly accruing statutory damages. *See* 820 ILCS 115/14. The IWPCA does not in itself create a legal right to payment; rather, it permits employees to collect compensation owed "pursuant to an employment contract or agreement." 820 ILCS 115/3. It is thus a separate contract or agreement that forms the basis of an IWPCA unpaid wage claim. *See Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986) ("The only thing the state law at issue in this case requires is that the employer honor his contract."). "Illinois courts have interpreted the term 'agreement' to be broader than a contract and to require only a manifestation of mutual assent." *Enger v. Chi. Carriage Cab Co.*, 77 F. Supp. 3d 712, 716 (N.D. Ill. 2014) (citations omitted). The IWPCA has a ten year statute of limitations.

House argues that his IWPCA claim for overtime compensation is based on any of three agreements between himself and Illinois Bell: (1) the Collective Bargaining Agreement ("CBA"); (2) the AT&T Code of Business Conduct; and (3) the "Reporting Time Worked" policy. R. 14 ¶¶ 21-23. Illinois Bell counters that an IWPCA claim based on the CBA is preempted by § 301 of the Labor Management Relations Act ("LMRA"), and that neither the Code of Conduct nor the time worked policy constitute "agreements" within the meaning of the IWCPA. The Court agrees with Illinois Bell.

1. <u>Collective Bargaining Agreement</u>

Section 301 of the LMRA entirely preempts state law claims for violations of collective bargaining agreements. *Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004). However, not every dispute concerning employment that involves a provision in a collective bargaining agreement is preempted. *Id.* To determine whether a state-law claim is preempted, courts look at the "legal character" of the claim: "a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement may go forward as a state-law claim, whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the CBA, will be preempted." *Id.* (quotations and citations omitted). If a claim is preempted, it must be brought under the LMRA, which requires employees to exhaust grievance and arbitration procedures set forth in collective bargaining agreements before filing suit. *See McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007).

The operative CBAs between Illinois Bell and the International Brotherhood of Electrical Workers set forth a variety of provisions regarding overtime pay.[3] House relies on the provision entitling him to time-and-a-half pay for all hours worked in excess of forty per week. R. 14 ¶ 21; R. 24 at 14; *see also* R. 20-1 at 3, 27.

---

[3] There are at least two CBAs relevant to this dispute, though only two have been provided to the Court to date (and those have been provided only in part). The first pertains to work performed before June 27, 2009, R. 20-1 at 2-24, and the second pertains to work performed between June 28, 2009 and June 23, 2012, *id.* at 26-36. The provisions of both agreements are substantially similar and the Court therefore refers to them singularly here.

Illinois Bell contends that this provision is one among many the Court would be required to consider to determine what compensation, if any, House is owed under the CBA. R. 20 at 11. Indeed, the very provision entitling employees to time-and-half pay for work in excess of forty-hours per week also entitles employees to overtime pay for work in excess of eight hours per day, requires an assessment of "applicable differentials" as set forth elsewhere in the agreement, and provides (by reference to another provision) for "premium payment" of twice the normal rate of pay when overtime in a week exceeds nine hours. R. 20-1 at 3, 27. Illinois Bell alludes to a complex analysis for computing overtime under the CBA that accounts for "premium payments," "wage and shift differentials," "credits for non-worked time," and other allowances and allocations that "exceed what is required by law." R. 20 at 5.

Illinois Bell cites to a number of cases in this circuit holding that overtime claims are preempted when, as here, they involve contractual formulas for compensation in collective bargaining agreements that exceed what the Illinois Minimum Wage Law ("IMWL")[4] minimally requires. *See Thigpen v. Ill. Bell Tel. Co.*, No. 10-cv-5589, 2010 WL 5373827, at *4 (N.D. Ill. Dec. 21, 2010) (noting that while the plaintiff purported to seek only time-and-half overtime pay pursuant to the IMWL, her claim was preempted where the collective bargaining agreement

---

[4] The IMWL provides: "Except as otherwise provided in this Section, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 ½ times the regular rate at which he is employed." 820 ILCS 105/4a.

7

entitled her to additional compensation and defined her compensable work); *Anderson v. JCG Indus. Inc.*, No. 09-cv-1733, 2009 WL 3713130, at *3 (N.D. Ill. Nov. 4, 2009) (same); *Gonzalez v. Farmington Goods, Inc.*, 296 F. Supp. 2d 912, (N.D. Ill. 2003) (explaining that where an entitlement exits "only by virtue of the collective bargaining agreement[,] [i]t is the agreement that is at the heart of the dispute" and preemption is required).

House does not dispute that the overtime provisions of the CBA entitle him to more than what is guaranteed by law. Instead, he endeavors to avoid preemption by disclaiming any interest in these more generous provisions. R. 24 at 14, n. 8 ("Defendant attempts to obfuscate House's simple claim for unpaid overtime wages by citing various rights to compensation that are created by the CBAs. House, however, is not seeking to enforce these rights . . . House only seeks to enforce rights guaranteed by Illinois law, rather than rights created by the CBAs."). In support of this position, he cites *Bartlett v. City of Chicago*, No. 14-cv-7225, 2015 WL 135286, at *5 (N.D. Ill. Jan. 9, 2015). At first blush, *Bartlett* suggests that an IWPCA claim may lie when a plaintiff seeks only to enforce a collective bargaining agreement to the extent of his statutory rights. But a look behind *Bartlett* to the case on which it primarily relies, *Hawkins v. Securitas Security Services. USA, Inc.*, No. 09-cv-3633, 2011 WL 5122679 (N.D. Ill. Oct. 28, 2011), more clearly articulates the rule.

In *Hawkins*, Judge Feinerman explained:

It does not matter whether Plaintiffs' decision to forgo their CBA rights
in this lawsuit is wise or foolish, strategically wise or shortsighted, or

8

> consistent or inconsistent with the wishes of their union. All that matters is that Plaintiffs are content with enforcing their statutory rights and willing to leave their additional CBA rights on the table—certainly for purposes of this case, and perhaps forever if issue preclusion prevents them from later seeking to enforce the CBA for the time periods covered by this suit.

*Id.* at *5. Critically, the claim the defendants argued was preempted in *Hawkins* was not an IWPCA claim; it was an IMWL claim. In holding that the plaintiffs could choose to forgo their contractual entitlements, Judge Feinerman was not permitting the plaintiffs to pick and choose which provisions of the collective bargaining agreement to enforce. Rather, he was acknowledging the propriety of an all-or-nothing approach: a plaintiff may enforce the terms of his collective bargaining agreement *or* pursue recovery of the statutory minimum wage.

On this point, the Supreme Court's opinion in *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), is particularly instructive. The question in *Caterpillar* was whether a state-law complaint for breach of an individual employment contract was preempted by the LMRA and properly removed to federal court. *Id.* In holding that it was not, the Court explained that "[a] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement [in state court], including state-law contract rights, so long as the contract relied upon is *not* a collective bargaining agreement." *Id.* at 395 (emphasis added). Here, House attempts to assert what is essentially a state law breach of contract claim based on the CBA. Such claims are preempted.

In summary, if House wishes to collect overtime compensation under the IWPCA pursuant to the CBA, he does so pursuant to *all* of the relevant terms.[5] Here, that involves a complex determination of compensable overtime, rate and wage differentials, and the application of premium payments and credits for non-worked time beyond what the law minimally requires. IWPCA claims that depend on the construction and application of collective bargaining agreements are preempted. On this basis, House's IWPCA claim fails.[6]

2. <u>Code of Conduct and Time Worked Policy</u>

In the alternative, House argues that the Illinois Bell Code of Business Conduct is another "employment agreement" upon which his IWPCA claim may rest. R. 24 at 11-12. At page two, just behind the cover, the Code contains the following disclaimer:

> <u>THE CODE OF BUSINESS CONDUCT IS NOT A CONTRACT OF EMPLOYMENT AND DOES NOT CREATE CONTRACTUAL RIGHTS OF ANY KIND BETWEEN AT&T AND ITS EMPLOYEES.</u>

---

[5] Mr. House has stated an IMWL claim, which Illinois Bell has not moved to dismiss. To the extent he tries here to assert the same claim but to enlarge its scope by way of a longer limitations period, he may not do so. *See Brand v. Comcast Corp.*, No. 12-cv-1122, 2013 WL 1499008, at *5, n. 1 (N.D. Ill. Apr. 11, 2013) (dismissing an IWPCA claim where, by the plaintiff's admission, all it added to the case was a significantly longer statute of limitations).

[6] Of course, House is still entitled to pursue the full amount of overtime he is guaranteed by the CBA. But he must do so under the LMRA, which, as previously noted, requires first that he exhaust his contractual grievance remedies.

R. 20-1 at 39 (emphasis in original).[7] The majority view in this district is that written disclaimers of this kind belie a finding of mutual assent. *See Mooney v. Wyndham Worldwide Operations, Inc.*, No. 13-cv-6592, 2014 WL 2959270, at *2 (N.D. Ill. Jul. 1, 2014) (collecting authority). Thus, the overtime policy articulated in the Code of Conduct cannot form the basis of House's IWPCA claim.

3. <u>Reporting Time Worked Policy</u>

Finally, House attempts to base his IWPCA claim on Illinois Bell's Reporting Time Worked policy. The policy provides that "[n]on-exempt employees are eligible for overtime pay for all hours actually worked in excess of 40 hours in a workweek." R. 20-1 at 42. The policy expressly acknowledges that it is intended to implement the requirements of the FLSA and all applicable state and local laws. *Id.* It states generally that "[a]dditional provisions regarding overtime may apply to represented employees under applicable collective bargaining agreements." *Id.* House argues that by disseminating this policy, "Illinois Bell agreed to pay McNally [*sic*] at a rate of at least time and one-half (1 ½) of his regular hourly rate. R. 24 at 11. He notes that unlike the Code of Conduct, the Reporting Time Worked policy has no disclaimer. *Id.*

The Court is not persuaded. To survive dismissal, a plaintiff must point to an agreement that is "more than an allegation that the employer is bound by existing

---

[7] The Code of Conduct provides that "[n]onexempt (overtime eligible) employees must accurately report all hours worked each day and each week and may not work overtime unless it is approved by a supervisor in advance. However, all overtime hours worked by nonexempt employees must be paid regardless of whether they were approved. Managers are prohibited from requiring or permitting nonexempt employees to work "off the clock." *Id.* at 40.

11

overtime laws." *Brand*, 2013 WL 1499008 at *6. The Reporting Time Worked policy does no more than memorialize Illinois Bell's commitment to abide by state and federal laws and applicable collective bargaining agreements. It is not an actionable employment agreement, and cannot sustain House's IWPCA claim.

## Conclusion

For the reasons set forth above, Illinois Bell's motion to dismiss [R. 19] is granted in part and denied in part as to House's claims under the FLSA, and granted as to House's claim under the IWPCA. House is granted leave to replead his IWPCA claim within 14 days of the date of this Order if he can allege in good faith an actionable employment agreement entitling him to overtime pay for unreported work. The parties are directed to submit position papers on the tolling of the IMWL claims within 14 days of the date of this Order.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: December 1, 2015